**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

VIRGINIA OYEBADE, *on behalf of herself, FLSA*
*Collective Plaintiffs, and the Class,*

              Plaintiff,

          v.

THE CHILDREN'S RESCUE FUND,
      d/b/a CHILDREN'S RESCUE FUND,
CRF-HOUSE EAST, LLC,
      d/b/a CHILDREN'S RESCUE FUND,
CRF-HOUSE WEST, LLC,
      d/b/a CHILDREN'S RESCUE FUND,
CRF-CLUSTER MODEL PROGRAM, LLC,
      d/b/a CHILDREN'S RESCUE FUND,
and ORLANDO IVEY,

              Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff, VIRGINIA OYEBADE (hereinafter, "Plaintiff"), on behalf of herself and others

similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective

Action Complaint against Defendants, THE CHILDREN'S RESCUE FUND, d/b/a CHILDREN'S

RESCUE FUND, CRF-HOUSE EAST, LLC, d/b/a CHILDREN'S RESCUE FUND, CRF-

HOUSE WEST, LLC, d/b/a CHILDREN'S RESCUE FUND, CRF-CLUSTER MODEL

PROGRAM, LLC, d/b/a CHILDREN'S RESCUE FUND ("Corporate Defendants"), and

ORLANDO IVEY ("Individual Defendant") (each individually, "Defendant" or, collectively, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), she and other similarly situated are entitled to recover from Defendants: (1) unpaid wages, due to time-shaving, (2) unpaid wages, due to illegal rounding, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), she and other similarly situated are entitled to recover from Defendants: (1) unpaid wages, due to time-shaving, (2) unpaid wages, due to illegal rounding, (3) statutory penalties, (4) liquidated damages, and (5) attorneys' fees and costs.

3.      Plaintiff further alleges, on an individual basis, that Defendants violated the New York Earned Safe and Sick Time Act ("ESSTA") when Defendants retaliated against Plaintiff for asserting her rights under the ESSTA. Plaintiff seeks all applicable remedies under the law including compensatory damages, punitive damages, and attorneys' fees and costs.

4.      Plaintiff further alleges, on an individual basis, that Defendants violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C.  § 2601 *et seq,* when they interfered with and retaliated against Plaintiff for taking time off for doctor's visits due to a serious medical condition. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

5.      Plaintiff further alleges, on an individual basis, that Defendants discriminated against her on the basis of disability in violation of Title I of the Americans with Disabilities Act

of 1990 ("ADA"), 42 U.S.C.S. § 12101 et seq. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this controversy, pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

## PARTIES

8.    Plaintiff VIRGINIA OYEBADE is a resident of Kings County, New York.

9.    Defendants collectively own and operate "Children's Rescue Fund" ("CRF"), an organization that operates shelter homes and temporary accommodations as housing assistance for the homeless in New York City, at the following locations:

a. CRF Icahn House – 1520 Brook Avenue, Bronx NY 10457
b. CRF House East – 4 E 28th St, New York NY 10016
c. Park Overlook (Webster House) – 1938 Webster Avenue, Bronx New York 10027
d. CRF Hope House – 170 E 206 Street, Bronx NY  10459
e. Ellington Hotel – 610 W 111th St, New York, NY 10025
f. Lenox House – 433 Lenox Avenue, New York, NY 10037
g. Apollo Hotel – 2027 7th Ave, New York, NY 10027
h. Light House – 38-59 11th Street, Long Island City 11101
i. Bruckner – 156 Bruckner Blvd, Bronx NY 10454
j. Park West – 465 Central Park West, New York, NY 10025
k. Liberty – 144-15 Liberty Avenue, Jamaica, NY 11435
l. CRF Kenilworth House – 1 Kenilworth Place, Brooklyn, NY 11210
m. Cauldwells – 661 & 665 Cauldwells Ave, Bronx, NY 10455
n. Belnord Isolation Center – 207-209 West 87th Street, New York, NY 10024
o. Poplar – 2443 Poplar Ave, Bronx, NY 10461
p. CRF Cluster Model Program – 1175 Walton Avenue, Suite A, Bronx, NY 10452
(collectively, the "Facilities")

10.     The Facilities are operated as a single integrated enterprise under the common control of Defendants. Specifically, the Facilities are engaged in related activities, share common ownership, and have a common business purpose.

a) The Facilities are under the control of Corporate Defendants and Individual Defendants. Specifically, Individual Defendant ORLANDO IVEY founded and operates the Facilities.

b) Defendants' headquarters are located at 384 E 149th Street, Bronx, NY 10455. Due to the nature of Defendants' services, Plaintiffs and Class Members perform work under Defendants' directions at any of Defendants owned shelter facilities, leased hotels and buildings converted into shelters and/or assistance centers.

c) Corporate Defendant THE CHILDREN'S RESCUE FUND's Form 990 tax return identifies the other Corporate Defendants CRF-HOUSE EAST, LLC, CRF-HOUSE WEST, LLC, CRF-CLUSTER MODEL PROGRAM LLC as related organizations. Moreover, on Schedule R of such tax return, Corporate Defendant THE CHILDREN'S RESCUE FUND is identified as the "direct controlling entity" of Corporate Defendants CRF-HOUSE EAST, LLC, CRF-HOUSE WEST, LLC, CRF-CLUSTER MODEL PROGRAM LLC. *See* **Exhibit A**, page 33, Corporate Defendant's Form 990 tax return.

d) All Facilities locations are advertised on a single website, available at https://www.childrensrescuefund.org/. *See* **Exhibit B,** "Our Locations" Page on CRF's company website ("CRF Website").

e) All Facilities are in the same business of assisting individuals and families, who are experiencing homelessness, in becoming independent and self-sufficient. *See* **Exhibit C**, the CRF Website's Home Page

f) All Facilities provide the following same services: (1) clinical service, (2) case management, (3) housing assistance, (4) daycare services, and (5) recreation services. *See* **Exhibit D,** "Our Services" Page on the CRF Website.

g) All Facilities can be reached at the same phone number, (718) 280-1348, and at the same email address, CRFinfo@icahnhouse.org. *See* **Exhibit E,** "Contact Us" Page on the CRF Website.

h) All Facilities share the same social media accounts: (1) Facebook account, available at https://www.facebook.com/crfnewyork?_rdc=2&_rdr; (2) Instagram account, available at https://www.instagram.com/childrensrescuefund/; (3) Twitter account, available at https://twitter.com/crfnewyork; (4) LinkedIn account, available at https://www.linkedin.com/company/crfnewyork/; and (5) YouTube account, available at https://www.youtube.com/@CRFNewYork. *See* **Exhibit F,** Defendants' Social Media Accounts.

i) All Facilities share finances, as donations to all Facilities can be made through the same webpage found on the company website. *See* **Exhibit G,** "Donate" Page on the CRF Website.

j) All Facilities have a centralized human resources department that deals with hiring, firing, and administering all the locations' workforce. All Facilities share a common career page on the company website where potential employees apply to a common human resources department. *See* **Exhibit H,** "Careers" Page on the CRF Website.

k)  The company website advertises that Defendants currently have 415 employees across all the Facilities. *See* **Exhibit I**, the CRF Website's home page.

l)  Independent of the location in which Defendants' accommodation or shelter is located, employees were freely transferred from one Facility to another in order to fulfill Defendants' interests.

m)  The Facilities share payroll methods and have a single, centralized system of labor relations for employees.

n)  The Facilities share the same logo. *See* **Exhibit C.**

o)  The employees of all Facilities, regardless of location, are assigned email addresses that bear the same domain (@icahnhouse.org).

p)  All Facilities share a common upper management which demonstrates the interrelation of operations among the Facilities. For instance, the Program Director, Pierre Nixon, worked at Defendants' CRF Kenilworth House located at 1 Kenilworth Place, Brooklyn, NY 11210. Nonetheless, Mr. Nixon's work email address has the domain @icahnhouse.org which is the domain used by all employees of all Facilities. Mr. Nixon did not have an email address that was specific to Defendants' CRF Kenilworth location. Having a domain that is common to all Facilities shows that Mr. Nixon and all employees, including upper management, can be interchangeable among the Facilities.

q)  The employees of all Facilities can raise all their concerns regarding Information Technology ("IT") by emailing helpdesk@icahnhouse.org, as all Facilities share the same IT support system.

11.     Corporate Defendant THE CHILDREN'S RESCUE FUND d/b/a CHILDREN'S RESCUE FUND is a domestic not-for-profit corporation organized under the laws of New York, with an address for service of process located at C/O THE CORPORATION, 1520 BROOK AVENUE, BRONX, NY 10457.

12.     Corporate Defendant CRF-HOUSE EAST, LLC, d/b/a CHILDREN'S RESCUE FUND is a foreign limited liability company organized under the laws of Delaware, with a principal place of business located at 4 East 28th Street, New York, NY 10016, and an address of service of process located at C/O THE CHILDREN'S RESCUE FUND, 1520 Brook Avenue, Bronx, NY 10457.

13.     Corporate Defendant CRF-HOUSE WEST, LLC., d/b/a CHILDREN'S RESCUE FUND, is a domestic not-for-profit corporation organized under the laws of New York, with a principal place of business and an address of service of process located at C/O THE CHILDREN'S RESCUE FUND, 1520 Brook Avenue, Bronx, NY 10457.

14.     Corporate Defendant CRF-CLUSTER MODEL PROGRAM, LLC, d/b/a CHILDREN'S RESCUE FUND, is a foreign limited liability company organized under the laws of Delaware, with a place of business and an address of service of process located at 1520 Brook Avenue, Bronx, New York 10457.

15.     Individual Defendant ORLANDO IVEY is the president and principal officer of Corporate Defendants. ORLANDO IVEY exercised control over the employment terms and conditions of Plaintiff and Class Members. ORLANDO IVEY had and exercised the power to (and also delegates to managers and supervisors the power to) (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff and Class Members. At all times, employees could complain to ORLANDO IVEY

directly regarding any of the terms of their employment, and ORLANDO IVEY would have the authority to effect any changes to the quality and terms of employees' employment. ORLANDO IVEY directly reprimanded any employee who did not perform his or her duties correctly. ORLANDO IVEY exercised functional control over the business and financial operations of Corporate Defendants. ORLANDO IVEY had the power and authority to supervise and control supervisors of Plaintiff and Class Members and could reprimand employees.

16.     At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

17.     At all relevant times, Defendants were Plaintiff's and Class Members' employers within the meaning of the FLSA and NYLL and the regulations thereunder.

18.     At all relevant times, Plaintiff and Class Members were Defendants' employees within the meaning of the FLSA and NYLL and the regulations thereunder.

19.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

20.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

21.     Plaintiff brings claims for relief as a collective action against Defendants pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt hourly-pay employees (including but not limited to housing specialists, social workers, case managers, coordinators, counselors, assistants, drivers, nurses, receptionists, aides, custodians, operations personnel, and security guards) employed by Defendants on or after the date that is 6 years before the filing of the Complaint in this case, as defined herein ("FLSA Collective Plaintiffs").

22.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper overtime premium at the rate of one and one half times the regular rate for work in excess of 40 hours per workweek, as a result of Defendants' policies of time shaving and rounding.

23.    The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs. The claims for relief are properly brought under and maintained as an opt-in collective action, pursuant to Section 16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ACTION ALLEGATIONS

24.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt hourly-pay employees (including, but not limited to, housing specialists, social workers, case managers, coordinators, counselors, assistants, drivers, nurses, receptionists, aides, custodians, operations personnel, and security guards) employed by Defendants (the "Class Members") on or after the date that is six years before the filing of the Complaint in this case, as defined herein (the "Class Period").

25.    All said persons, including Plaintiff, are referred to herein as the "Class". The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determined from Defendants' records. For purposes

of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

26.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is presently based are within the sole control of Defendants.

27.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of: (i) failing to compensate wages due to time-shaving, and (ii) failing to compensate wages due to detrimental rounding.

28.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

29.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interest antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

30.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods of efficiently managing this action as a class action.

31.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

32.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a) Whether Defendants employed Plaintiff and the Class within the meaning of New Your law;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly compensated Plaintiff and Class Members for all hours worked;

e) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all their hours worked due to a policy of time-shaving;

f) Whether Defendants failed to pay Plaintiff and Class Members for all their hours worked due to detrimental rounding;

g) Whether Defendants provided proper wage notices to Plaintiff and Class members per requirements of the NYLL; and

h) Whether Defendants provided proper wage statements to Plaintiff and Class members per requirements of the NYLL.

## STATEMENT OF FACTS

### *Plaintiff OYEBADE*

33.    In or around January 2021, Plaintiff OYEBADE was hired by Defendants to work as a case worker at Defendants' CRF Kenilworth House located at 1 Kenilworth Place, Brooklyn,

NY 11210. Plaintiff OYEBADE's employment with Defendants terminated in or around December 31, 2023.

34.    During her employment with Defendants, Plaintiff OYEBADE was compensated at a rate of $24.72 per hour bi-weekly.

35.    Throughout her employment, Plaintiff OYEBADE was regularly scheduled to work five (5) days per week, Mondays to Thursdays and Sundays, from 9:00 a.m. to 5:00 p.m. with a one (1) hour unpaid meal break, for a total of thirty-five (35) hours per week.

*Plaintiff's and Class Members' Timeshaving claims*

36.    At all relevant times, Defendants knowingly and willfully subjected Plaintiff, FLSA Collective Plaintiffs and Class Members to a policy of time shaving, in violation of the NYLL and the FLSA.

37.    At all relevant times, Defendants failed to pay Plaintiff, FLSA Collective Plaintiffs and Class Members for all hours worked as Defendants required them to work through their lunch breaks and off-the-clock without any compensation.

38.    Throughout their employment, Plaintiff was supposed to have a one (1) hour free and clear meal break. However, Plaintiff always worked through her lunch breaks without any compensation. As her office doors were broken, clients often came in to ask for assistance and Plaintiff was required to help. As a result, Plaintiff's lunch breaks were interrupted, and she would put her food aside or eat while working. Despite Plaintiff working through her meal break, Defendants always still deducted a daily one (1) hour meal break from her paychecks. This resulted in unpaid wages for five (5) hours per week. Similarly, FLSA Collective Plaintiffs and Class Members were automatically deducted one (1) hour for meal break each workday even for days when Class Members did not have a free and clear meal break.

39.     Defendants' time shaving policy was clearly intentional, as Defendants were aware that Plaintiff, FLSA Collective Plaintiffs and Class Members were on break or off-the-clock, yet Defendants still required them to work without any compensation.

*Plaintiff's and Class Members' Illegal Rounding Claims*

40.     At all relevant times, Defendants intentionally and willfully subjected Plaintiff, FLSA Collective Plaintiffs and Class Members to a policy of improper rounding, in violation of the NYLL.

41.     Throughout their employment, Defendants always rounded down Plaintiff's hours for each shift to her detriment. As shown on **Exhibit J**, Plaintiff OYEBADE's wage statements always show time paid exactly on the whole hour, even though her punch-ins are to the exact minute. For instance, during the pay period from 12/4/2023 – 12/17/2023, Plaintiff OYEBADE was paid for exactly fifty-nine (59) hours. **Exhibit J**, page 1. Similarly, during the pay period from 11/20/2023 – 12/3/2023, Plaintiff OYEBADE was paid exactly for fifty-seven (57) hours. **Exhibit J**, page 2. This policy of rounding resulted in Plaintiff being compensated for less than the time she actually worked. FLSA Collective Plaintiffs and Class Members were also subjected to Defendants' unlawful rounding. Through this policy, Defendants reduced their employees' compensable hours every pay period. As a result, Plaintiff, FLSA Collective Plaintiffs and Class Members were not paid proper compensation for all hours worked.

42.     Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs and Class Members for all hours worked due to improper rounding, in violation of the NYLL and the FLSA.

*Plaintiff's WTPA Claims*

43.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into

NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

44.     Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

45.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed,

and stated that the WTPA would dramatically change this by increasing penalties
for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, \*21-22 (S.D.N.Y. March 20, 2020)

46.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

47.    Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members worked and their corresponding pay rates, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked, or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee worked overtime. Either possibility would have allowed Plaintiff and Class to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

48.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts

due to Defendants' continued attempts to hide wrongdoing from employees.

49.     Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff for all hours worked, in violation of the FLSA and NYLL.

50.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff wage notices and wage statements, in violation of the NYLL.

51.     The direct effect of failing to state the number of hours an employee worked and the corresponding proper pay rate is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

52.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (I) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

53.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

54.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours and pay rates been reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on

behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the omission prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

55.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id.* Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

56.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

57.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the

United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

58.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

59.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs were irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

60.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and Class Members the proper overtime wages at a

rate that is at least one-and-one-half times the regular rate of pay for all hours worked in excess of forty hours per workweek, due to time shaving, in violation of the FLSA and NYLL.

*Plaintiff OYEBADE's Discrimination and Failure to Accommodate*

61.     Defendants discriminated and retaliated against Plaintiff OYEBADE on the basis of her disability and long-term health condition, in violation of the ADA. FLMA, and the ESSTA.

62.     Plaintiff OYEBADE has sickle cell disease which Defendants knew upon hiring Plaintiff OYEBADE. Because of this disease, Plaintiff OYEBADE was required to obtain medical treatment from a hematologist every 21 days which Defendants were aware of as Plaintiff OYEBADE sent Defendants her doctor's notes.

63.     Because of her medical condition, Plaintiff OYEBADE asserted her rights under the ESSTA and the FMLA and took days off to meet her medical requirement. However, Defendants discriminated and retaliated against Plaintiff OYEBADE by writing her up and giving her warnings multiple times due to leaves she took under the ESSTA for her sickle cell disease.

64.     Plaintiff OYEBADE brought this up with Franchesca Ramirez from Defendants' Human Resources Department. However, instead of acknowledging her rights under the ESSTA, Franchesca urged her to seek medical attention during her days off even though this was not realistic given that it depends on her medical provider's scheduling and also potential emergencies. Ms. Ramirez also warned her that if this medical condition resulted in "many [work] days missed," unpaid leave of absence would be an option for Plaintiff OYEBADE. Defendants failed to provide Plaintiff OYEBADE reasonable accommodations for days Plaintiff OYEBADE needed to seek medical attention despite knowing of such medical requirement.

65.     Defendants violated the ESSTA by retaliating against Plaintiff OYEBADE when Plaintiff OYEBADE asserted her rights under the ESSTA.

66.    Moreover, Defendants violated the ADA because they knowingly and willfully discriminated against Plaintiff OYEBADE on the basis of her disability making it difficult for Plaintiff OYEBADE to take sick leaves under the ESSTA and failing to make reasonable accommodations despite knowing Plaintiff OYEBADE's medical requirement of seeing the doctor every 21 days.

67.    Defendants additionally violated the FMLA when they intentionally denied Plaintiff OYEBADE sick leave and sick pay and failed to accommodate her need to see a doctor regularly in order to care for her sickle cell disease. At all times, both before her hiring and throughout Plaintiff's employment, Defendants were aware of Plaintiff's health issues as she had disclosed them to Defendants upon consideration for hire. However, Defendants nonetheless denied Plaintiff her sick leave and failed to accommodate her needed healthcare appointments.

68.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

69.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

70.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

71.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

72.     At all relevant times, Defendants had gross annual revenues in excess of $500,000.

73.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to time-shaving.

74.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs all wages owed due to a policy of detrimental rounding.

75.     At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by failing to pay Plaintiff and FLSA Collective Plaintiffs all wages due.

76.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiff of their rights under the FLSA.

77.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

78.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

79.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of her reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

80.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

81.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

82.     Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them wages in the lawful amount for all hours worked due to time-shaving.

83.     Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by failing to pay them wages in the lawful amount for all hours worked due to a policy of detrimental rounding.

84.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage notices, at date of hiring and annually thereafter, as required under the NYLL.

85.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members accurate wage statements, as required under the NYLL.

86.     Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime , reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## <u>INTERFERENCE AND RETALIATION UNDER THE<br>EARNED SICK AND SAFE TIME ACT</u>

Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

87.     Defendants knowingly and willfully failed to provide Plaintiff OYEBADE with proper sick leave as required under the ESSTA.

88.     Defendants are employers covered by ESSTA's sick leave provision as an "employers with one hundred or more employees in any calendar year, each employee shall be provided with up to fifty-six hours of paid sick leave each calendar year." NY Lab. Law § 196-B(1)(b).

89.     Defendants are required to give employees sick leave upon oral or written request for "a mental or physical illness, injury, health condition of such employee. . .regardless of whether such illness, injury, or health condition has been diagnosed or requires medical care at the time that such employee requests such leave." NY. Lab. Law § 196-B(4)(a).

90.     NYLL makes it unlawful for an "employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, [to] discharge, threaten, penalize, or in any other manner, discriminate, or retaliate against any employee because such employee has exercised his or her rights afforded under this section, including, but not limited to, requesting sick leave and using sick leave, consistent with the provisions of section two hundred fifteen of this chapter." New York Lab. Law § 196-B (7).

91.     Due to Defendants' ESSTA violations, Plaintiff OYEBADE seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

**COUNT IV**

**INTERFERENCE AND RETALIATION UNDER THE**
**FAMILY AND MEDICAL LEAVE ACT AGAINST PLAINTIFF OYEBADE**

92.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein..

93.     The FMLA states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period …. because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S. Code § 2612(a)(1)(D).

94.     The FMLA defines serious health condition as, "an illness, injury, impairment, or physical or mental condition that involves … continuing treatment by a health care provider. 29 U.S. Code § 2611(11).

95.     Section 2615(a) of the FMLA, states in pertinent part:

Interference with rights.

i.     Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

ii.    Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

96.     Defendants are subject to the FMLA as a covered employer. Defendants are a covered employer because they employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar workweeks in the year preceding their violation of Plaintiff OYEBADE's rights under the FMLA. Defendants have more than fifty (50) employees and therefore meet FMLA standards.

97.     Plaintiff OYEBADE is an eligible employee under the FMLA because she had worked at least 1,250 hours in the 12 months preceding her request for leave.

98.     Defendants interfered with Plaintiff OYEBADE's rights under the FMLA by retaliating against Plaintiff OYEBADE for taking time off to attend medical appointments and denying Plaintiff OYEBADE reasonable accommodations on days when Plaintiff OYEBADE required medical attention due to her serious health condition.

99.     Plaintiff OYEBADE seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

**COUNT V**

**DISABILITY DISCRIMINATION UNDER
THE AMERICANS WITH DISABILITIES ACT AGAINST PLAINTIFF OYEBADE**

100.     Plaintiff OYEBADE realleges and reavers by reference all allegations in all the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

101.     At all relevant times, Defendants operated a business that discriminated against Plaintiff OYEBADE on the basis of her disability in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").

102.     Defendants' conduct was intentional and undertaken with reckless disregard for Plaintiff OYEBADE's protected rights under the ADA.

103.     Defendants violated the ADA when they discriminated against Plaintiff OYEBADE on the basis of her disability. Defendants unlawfully refused Plaintiff OYEBADE's numerous requests for accommodations to her work duties, which Plaintiff OYEBADE made on the basis of her disability.

104.     Defendants' refusal of these accommodations to Plaintiff OYEBADE constituted a discriminatory practice on the basis of Plaintiff OYEBADE's disability. By refusing to accommodate Claimant on the basis of her disability, Defendants violated the ADA.

105.     Plaintiff OYEBADE seeks all applicable remedies under the law, including economic damages, compensatory damages, punitive damages, back pay, front pay, and attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, ESSTA, ADA and FMLA;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.  An award of unpaid wages due under the FLSA and NYLL, including those due to Defendants' time-shaving practices;

d.  An award of unpaid wages due under the FLSA and NYLL, due to Defendants' unlawful rounding policy;

e.  An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours worked, pursuant to 29 U.S.C. § 216;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours of work, pursuant to NYLL;

h.  An award of economic damages, compensatory damages, punitive damages, front pay and back pay due under ADA;

i.   All applicable compensatory and punitive damages under the FMLA;

j.   All applicable compensatory and punitive damages under the ESSTA;

k.   An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

l.   Designation of Plaintiff as the Representatives of FLSA Collective Plaintiffs;

m.  Designation of this action as a class action pursuant to F.R.C.P. 23;

n.   Designations of Plaintiff as Representatives of the Class; and

**o.**   Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:  October 15, 2024
        New York, New York

Respectfully submitted,

By:   _/s/ C.K. Lee_____
        C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
_Attorneys for Plaintiff,_
_FLSA Collective Plaintiffs,_
_and the Class_